**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter A Bayer and Renee L Bayer, | No. CV-15-02430-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Nationstar Mortgage LLC and Aurora Loan Services LLC, | |
| Defendants. | |

Defendants Nationstar Mortgage LLC and Aurora Loan Services, LLC move for summary judgment and have filed a statement of facts in support of that motion. Docs. 32, 33.  Plaintiffs Peter and Renee Bayer, who are represented by counsel, have responded (Doc. 34) and filed an "Objection[] to Defendants' Evidence Submitted In Support of Summary Judgment" (Doc. 35).  Plaintiffs' "Objection" contains both an opposing statement of facts and a 14-page memorandum outlining specific and general objections to Defendants' declaration of Fay Janati.  *Id.*  Defendants have replied and moved to strike the 14-page memorandum pursuant to LR Civ. 7.2(m)(2).  Doc. 40. Neither party has requested oral argument.  Defendants' motion will be granted in part and denied in part.

**I.      Background.**

On October 25, 2006, Plaintiffs signed a Deed of Trust securing a Promissory Note in the amount of $269,000 from GN Mortgage LLC ("GNM").  Doc. 33, ¶¶ 1, 2.

The Deed was recorded on November 2, 2006 on property owned by Plaintiffs at 10685 East Valley View Drive in Gold Canyon Arizona.  Doc. 1-1 ¶¶ 1, 12-14.  The Note, as submitted by Defendants, bears several endorsements.  Doc. 33, ¶ 3; Doc. 32-1 at 25 (Exhibit B to the motion).  Plaintiffs object to the authenticity and admission of Defendants' Exhibit B.  Doc. 35, ¶ 3.

Defendants assert that Federal National Mortgage Association ("Fannie Mae") owns the debt the Note represents.  Doc. 33, ¶ 6.  Nationstar is a loan servicer for Fannie Mae, and "currently possesses the original Note endorsed in blank."  *Id.*, ¶¶ 4-5. Plaintiffs dispute these facts, and assert that "no admissible evidence demonstrates that Fannie Mae 'owns' the debt that the Note represents" or "reflects a servicing arrangement between Nationstar and Fannie Mae."  Doc. 35, ¶¶ 5-6.

The named beneficiary on the Deed of Trust is Mortgage Electronic Registration Systems Inc. ("MERS"), "acting solely as a nominee for Lender and Lender's successors and assigns."  Doc. 33, ¶ 8.  The Deed of Trust provides:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

*Id.*, ¶ 9.

On December 6, 2010, MERS assigned its beneficial interest under the Deed of Trust, including "the full benefit of all powers" contained therein, to Aurora Loan Services LLC, effective as of November 15, 2010.  *Id.*, ¶ 10.  On June 26, 2012, Aurora assigned "all its right, title and interest In [sic] and to said Deed of Trust" to Nationstar, effective as of July 1, 2012.  Doc. 32-1 at 47; Doc. 33, ¶ 11.  In June 2015, Nationstar executed a Substitution of Trustee, appointing David W. Cowles as Successor Trustee under the Deed of Trust.  Doc. 33, ¶ 12.  On June 19, 2015, Mr. Cowles recorded a Notice of Trustee's Sale, setting the property to be sold at public auction on September 25, 2015.  *Id.*, ¶ 13; Doc. 32-1 at 52 (Exhibit G – Notice of Trustee's Sale).  A

"Notice of Statement of Breach or Non-Performance" is attached to the Notice of Trustee's Sale, and states that Plaintiffs breached the Note and Deed of Trust for "failure to make monthly payments of $1,160.87 each, from 8/01/13 and all subsequent installments."  Doc. 33, ¶ 14; Doc. 32-1 at 54.

Plaintiffs do not deny that these events – the assignments, substitution, and filing of Notices as reported by Defendants – occurred, but rather dispute the legal effect of the acts and the authority of the entities performing them.  Doc. 35, ¶¶ 10-14.  Plaintiffs further dispute Defendants' assertion that Plaintiffs failed to make payments from August 2013 forward, and argue that payments they made between 2013 and 2015 were either returned, misapplied, or assessed to unauthorized charges and fees.  *Id.*, ¶ 14.

On November 18, 2015, Plaintiffs filed this action against Aurora, Nationstar, and Cowles in Pinal County Superior Court, and requested a Temporary Restraining Order ("TRO").  Doc. 1-1.  The TRO was granted, temporarily enjoining the trustee's sale.  *Id.* at 50.  The case was removed to this Court on November 30, 2015.  Doc. 1.  On December 29, 2015, Plaintiffs filed an amended complaint, eliminating Cowles as a Defendant.  Doc. 10.

**II.    Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1  **III.    Analysis**

2        Plaintiffs assert seven causes of action: (1) false recordings in violation of A.R.S.

3  § 33-420; (2) breach of contract; (3) breach of the duty of good faith and fair dealing;

4  (4) negligence per se; (5) violations of the Fair Debt Collection Practices Act

5  ("FDCPA"), 15 U.S.C. § 1692; (6) violations of the Real Estate Settlement Procedures

6  Act ("RESPA"), 12 U.S.C. § 2605; and (7) violations of the Truth in Lending Act

7  ("TILA"), 15 U.S.C. § 1639.  Doc. 10, ¶¶ 98-341.  Plaintiffs' claims break down into two

8  categories: claims disputing Defendants' authority to conduct the trustee's sale, and

9  claims alleging unauthorized charges and misapplied payments.

10      **A.    Claims 1-4: Authority to Initiate a Non-Judicial Foreclosure.**

11        Arizona statutes do not require the beneficiary to show possession of or otherwise

12  document its right to enforce the underlying note before a trustee may exercise the power

13  of sale.  *Hogan v. Wash. Mut. Bank, N.A.*, 277 P.3d 781, 783 (Ariz. 2012).  "Absent an

14  affirmative allegation by the borrower that the trustee or beneficiary is not, in fact, the

15  'true' trustee/beneficiary, the trustee or beneficiary may conduct a trustee's sale without

16  having to demonstrate his authority to foreclose." *Steinberger v. McVey ex rel. Cnty. of*

17  *Maricopa*, 318 P.3d 419, 430 (Ariz. Ct. App. 2014).  But "if a borrower is in default and

18  possesses a good faith basis to dispute the authority of an entity to conduct a trustee's

19  sale, the borrower should not be prohibited from challenging its authority simply because

20  such action may slow down the foreclosure process."  *Id.*

21        Defendants argue that they are entitled to summary judgment on all claims

22  involving the trustee's sale.  Doc. 32 at 4-9.  Defendants assert that "[i]t is well

23  established that MERS may serve as a beneficiary of an Arizona trust deed in a nominee

24  capacity."  *Id.* at 4-5.  Further, "it is beyond dispute that MERS may validly assign its

25  interest in a trust deed and that such assignment does not nullify the power of sale."  *Id.* at

26  5 (citing *e.g.*, *Steinberger*, 318 P.3d at 427 n.11).  Defendants frame the analysis as

27  follows: "Plaintiffs executed a Deed of Trust naming MERS as beneficiary in a nominee

28  capacity for the original lender. . . . [and] Defendants obtained their interest in the Deed

of Trust by assignment from MERS."  *Id.*  "Nationstar became the beneficiary of the Deed of Trust by assignment from MERS" and "appoint[ed] Mr. Cowles as Successor Trustee."  *Id.*  "Mr. Cowles as Successor Trustee has authority to notice and ultimately to conduct the Trustee's Sale."  *Id.* (citing A.R.S. § 33-808(A); A.R.S. § 33-810(A)).  Thus, Defendants reason, Plaintiffs' claims pertaining to Defendants' lack of authority to initiate a non-judicial foreclosure are without merit and the Court should award summary judgment.  *Id.*

In response, Plaintiffs make several arguments that Defendants lacked authority to initiate a non-judicial foreclosure under Arizona law: (1) GN Mortgage, LLC did not exist in October 2006 when the Deed of Trust was signed; (2) MERS's assignment of the Deed of Trust in December 2010 was executed without authority and by a non-MERS member; (3) conditions precedent to enforcing the Deed of Trust were not performed in compliance with the Deed's terms; (4) MERS is not a beneficiary of the Deed of Trust under A.R.S. § 33-801(1); and (5) contradictory evidence of ownership raises a material issue of fact.  Doc. 34 at 4-14.  Defendants contend that each of Plaintiffs' arguments fails as a matter of law.  Doc. 40 at 2-4.

### 1.     GN Mortgage, LLC.

Plaintiffs first argue that Defendants had no authority under the Deed of Trust because the original Lender, GNM, did not exist in October 2006 when Plaintiffs and GNM signed the Note and Deed of Trust.  Thus, Plaintiffs claim, GNM obtained no interest in the Deed of Trust and any interest or authority it assigned to MERS as the nominal beneficiary was defective.  Because MERS received a defective interest, it could only assign a defective interest.  Accordingly, when MERS recorded an assignment from GNM to Aurora in December 2010, and from Aurora to Nationstar in July 2012, the interest was defective and Defendants lacked authority to act under the Deed of Trust.

Other courts have rejected similar arguments that a deed of trust was invalid because the original lender named in the deed of trust did not exist as listed.  *See, e.g., Galindo v. Select Portfolio Servicing, Inc.*, No. 2: 15-cv-03582, 2016 WL 4925908, at *5-

6 (C.D. Cal. Sept. 12, 2016); *Moran v. HSBC Bank USA, N.A.*, 2015 WL 139705 (N.D. Cal. Jan. 9, 2015). Significantly, Plaintiffs do not contest that they signed the Note and Deed of Trust with GNM in October 2006. Nor do they contest that that they received $269,000 from GNM that they were obligated to pay back. Plaintiffs fail to provide any legal basis as to why GNM's corporate status impairs its ability to sell or assign its rights under the Deed of Trust, and the Court finds none.

What is more, Defendants provide evidence that GN Mortgage, LLC, a Wisconsin company, was registered and doing business in California as early as 2004. Doc. 33 at 7. Plaintiffs argue that a search of Wisconsin records show that GN Mortgage, LLC did not exist until 2011, and the MERS number on the Deed of Trust belongs to a separate company, Guaranty Bank. Doc. 34 at 5-6. Thus, Plaintiffs argue, GN Mortgage, LLC, did not exist in 2006 and MERS had no interest to later assign to Aurora and Nationstar. *Id.* This argument is not persuasive. Defendants submitted records from the California secretary of state's website showing that two separate documents were filed by GN Mortgage, LLC with California. The first, filed on June 03, 2005, pertains to an entity named "GN Mortgage, LLC." Doc. 33 at 7 (pdf available online at https://businesssearch .sos.ca.gov, and entering the entity number 200404110188 (last visited March 24, 2017)). The document also identifies "Guaranty Bank" as the entity's Managing Member, and provides a business address of 4000 West Brown Deer Road, Brown Deer Wisconsin. *Id.* The second document, filed on May 15, 2009, renames the entity GB Mortgage, LLC, but lists the same managing member and business address. *Id.*

A search of Wisconsin records for the second name, GB Mortgage, LLC, shows that the company, located at 4000 W Brown Deer Road in Brown Deer Wisconsin, was registered in 1993. At that time, it took the name "G N Mortgage Corporation." In 1999, the name changed to "GN Mortgage Corporation." In 2003, the name changed again to "GN Mortgage, LLC," and remained so until 2007 when the entity was renamed "GB Mortgage, LLC." The evidence clearly shows that GN Mortgage, LLC, was in existence at the time of the agreement, and no reasonable juror could conclude otherwise. For

these reasons, the Court will grant summary judgment in favor of Defendants on Plaintiffs' GN Mortgage argument.[1]

### 2.    Authority to Execute Assignments.

Plaintiffs next argue that "the First Assignment of the DOT was executed without authority by a non-MERS member.  It was also backdated and the signer, Jan Walsh, has presented no admissible evidence of authority."  Doc. 34 at 6.  Plaintiffs present no further argument on the issue.  *See id.*  Defendants argue that Plaintiffs "attempt to turn the burden of proof on its head."  *Id.*.

Plaintiffs bear the burden of proving that MERS lacked authority to assign the Deed of Trust.  *Steinberger*, 318 P.3d at 430 (stating that a mortgagor "bears the burden of proving her claim that [the mortgagee] lack[s] the authority to conduct a trustee's sale").  Plaintiffs provide no evidentiary support for their argument.  There is nothing in the record evidencing that Ms. Walsh lacked authority to sign on behalf of MERS, and "mere attorney argument is not enough to create a disputed issue of material fact."  *White v. Aurora Loan Servs. LLC*, No. CV-14-01021-PHX-JAT, 2016 WL 3653958, at *7 (D. Ariz. July 6, 2016) (citing *Liberty Lobby*, 477 U.S. at 248).  Because Plaintiffs fail to point to actual evidence, the Court will grant summary judgment on plaintiffs' Jan Walsh argument.  *Matsushita Elec. Indus.*, 475 U.S. at 586-87.

### 3.    Conditions Precedent.

Plaintiffs next argue that Defendants lack authority to initiate non-judicial foreclosure because they did not comply with the necessary "conditions precedent" listed in Section 22 of the Deed of Trust.  Doc. 34 at 6.  Specifically, Plaintiffs state that:

> The DOT required conditions precedent be performed by the Lender, not the "beneficiary" as defined in the DOT.  The DOT: (a) required **the Lender** to give the Trustor (i.e., the Plaintiffs) 30 days' notice of default before accelerating the Note balance; (b) requires that **the Lender** give the Trustee written notice of the occurrence of an event of default and of

---

[1] *See* GB Mortgage, Wisconsin Department of Financial Institutions, (last visited March 24, 2017) *available at* https://www.wdfi.org/apps/CorpSearch/Details.aspx?entityID=G024692&hash=424996440&searchFunctionID=d9855b77-b81c-4d4e-b54c-f6bb9bcb2e78&type=Advanced&nameSet=Entities&q=GB+Mortgage&textSearchType=ExactPhrase&includeActiveOrgs=Include&includeOldNames=Exclude&=).

1
2
3
4
5

  **Lender's election** to cause the Property to be sold, before the Trustee may initiate a sale; (c) imposes a duty on the Lender to release the DOT "[u]pon payment of all sums secured by this Security Instrument. . . ."; (d) **secures to Lender (not the beneficiary) (i) the repayment of the Loan**, and (ii) the performance of borrowers' covenants and agreements under the DOT and Note; and (e) states that if applicable law is silent on whether the parties may agree to something by contract, "such silence shall not be construed as a prohibition against agreement by contract.

6
7
8
9
10
11
12
13

*Id.* (emphasis in original).  Plaintiffs do not elaborate on this argument – this quotation contains their entire argument.  Plaintiffs do not contend that Nationstar or Mr. Cowels failed to comply with any particular requirement of the Deed.  Rather, Plaintiffs seem to be arguing that Defendants were not in compliance with the Deed's terms because the terms require these actions to be performed by the "Lender," not the "beneficiary."  *Id.*  This argument, to the extent Plaintiffs are making it, is unpersuasive.  As discussed above, Plaintiffs have failed to present a material issue of fact showing GNM was a defective lender.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

  To the extent Plaintiffs are arguing that only the original Lender was capable of complying with the Deed of Trust, the argument is unpersuasive.  This argument has been rejected by a number of courts, including this district.  *See, e.g.*, *Schultz v. BAC Home Loans Servicing LP*, No. 11-cv-0558, 2011 WL 3684481, at *2 (D. Ariz. Aug. 23, 2011) (finding that a deed of trust was not breached by a lenders' servicing agent when the agent was empowered to exercise the authority of the lender under "paragraph 22 of the deed of trust").  What is more, Section 20 of the Deed of Trust states unambiguously that "[t]he Note or partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."  Doc. 32 -1 at 37, § 20.  It goes on to state that "[a] sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."  *Id.*  Thus, it is clear that the original lender could transfer its interests and authority to another party under the Deed of Trust. Whether the Lender in this case granted such authority to Defendants is a separate issue

1  addressed below.   The Court will grant summary judgment to Defendants on this

2  argument.

3  **4.      MERS as a Beneficiary.**

4  Plaintiffs argue that MERS does not satisfy the statutory definition of a beneficiary

5  under Arizona law.   Plaintiffs concede that the Deed of Trust identifies MERS as the

6  "beneficiary."  Doc. 35, ¶ 8.  Plaintiffs further concede that, under Arizona law, MERS

7  can be a Lender's nominee capable of assigning the Lenders' interest in a Deed of Trust.

8  Doc. 34 at 4.  But Plaintiffs argue that MERS is not a "beneficiary" as defined by A.R.S.

9  § 33-801(1).  *Id.* at 6.  Specifically:

10         Ariz. Rev. Stat. §33-801(1) defines "beneficiary" as "the person named or
11         otherwise designated in a trust deed as the person for whose benefit a trust
       deed is given."  The person for whose benefit a trust deed is given, is the
12         person owed money.   This is the Lender/Note Holder because the DOT
       specifies that "this Security Instrument secures to Lender: (i) the repayment
13         of the Loan. . . ."  Further, the DOT gives all operative powers to "Lender,"
       not to "MERS" or "beneficiary" or "agent" or to "Loan Servicer."  The
14         DOT uses the term "Loan Servicer" when it means servicer, "Lender" when
       it means lender, and does not mention the "Beneficiary" except in a novel
15         role "solely as nominee" for Lender or successor "Lender." Because MERS
       is not entitled to payments on the Loan and is not even mentioned in the
16         Note, it was not 'the person for whose benefit the trust deed was given' and
       not the beneficiary under A.R.S. § 33-801(1).   "[I]t is unlikely that the
17         parties' agreement may override the statutory definition of 'beneficiary.'"
       *Erickson v. Green Tree Serviceing, LLC*, No. 14-cv-080809, 2015 WL
18         3507350 (D. Ariz. 2015).

19  *Id.*

20  Plaintiffs do not explain the significance of this argument.  Even if it is true that

21  MERS was not a "beneficiary" within the meaning of the statute, they do not explain the

22  consequence of this fact on the trustee's sale in this case.  Their argument ends with the

23  above assertion.  *Id.*

24  It is well established that MERS may serve as a beneficiary of an Arizona trust

25  deed in a nominee capacity, and that MERS may validly assign its interest in a Deed of

26  Trust.  *See, e.g.*, *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1170 (9th Cir. 2013)

27  (finding that the assignee of a Deed of Trust had authority to appoint a successor trustee

28  and initiate non-judicial foreclosure, where the deed of trust explicitly designated MERS

as the nominee beneficiary on behalf of the lender and its successors and assignees, and MERS subsequently assigned and transferred all beneficial interests to the assignee); *Steinberger v. McVey*, 318 P.3d 419, 427 n.11 (Ariz. Ct. App. 2014) (rejecting borrower's argument "that MERS, as the original beneficiary, did not have the authority to assign its beneficial interest in the deed of trust because it never had possession of the note"); *Dufour v. Home Show Mortg., Inc.*, 2012 WL 6049683, at *4 (D. Ariz. Dec. 5, 2012) ("[Plaintiff's] assertion is that MERS lacked authority to make assignments.  Such an assertion has been directly rejected by both the Arizona Supreme Court and the Ninth Circuit Court of Appeals"); *Neal v. Bank of Am., N.A.*, 2012 WL 3638762, at *3 (D. Ariz. Aug. 24, 2012) (rejecting assertion "that MERS lacked authority to assign the Deed of Trust"); *Kakarala v. Wells Fargo Bank, N.A.*, 2012 WL 1458235, at *8 (D. Ariz. Apr. 27, 2012) ("MERS, as beneficiary and nominee for the lender and its successors and assigns, had authority to assign the deed of trust to Defendant, and Defendant had authority to proceed with a non-judicial foreclosure"); *In re Mortg. Elec. Regis. Sys., Inc.*, 2011 WL 4550189, at *7 (D. Ariz. Oct. 3, 2011) ("MERS may perform valid assignments"); *Kentera v. Fremont Inv. & Loan*, 2011 WL 4005411, at *5 (D. Ariz. Sept. 8, 2011) ("Plaintiffs' argument that . . . MERS could not execute an assignment of the deed of trust, fails to state a claim").

Plaintiffs rely entirely on *Erickson*, 2015 WL 3507350 at *7, where the court considered a motion to dismiss a plaintiff's complaint alleging many of the same claims alleged here, including breach of contract, breach of good faith and fair dealing, and negligence.  *Id.*  In denying the motion to dismiss, the court recognized a possible argument that MERS does not satisfy the statutory definition of a beneficiary, but did little more.  *Id.*  And as noted above, Plaintiffs do not explain the significance of this conclusion even if it is correct.  The heart of Plaintiff's argument, however, appears to be that the current trustee's sale is not valid because the authority to conduct it ran through MERS.  As noted above, numerous cases in this Court, the Ninth Circuit, and Arizona have held that MERS may assign a deed of trust that leads to a trustee's sale.  The Court

cannot disregard this authority merely because *Erickson* recognized a possible theory that MERS is not a statutory beneficiary.  The Court will grant summary judgment to Defendants on this argument.

### 5.    Contradictory Evidence of Ownership.

Plaintiffs next argue that there is a factual issue about the identity of the "owner" or "holder" of the note.  Doc. 34 at 7-12.  Specifically, Plaintiffs argue that the "proffered copy of the 'original Note' bears four endorsements from various entities, none of them parties[,]" but "earlier versions of the Note submitted to the bankruptcy court . . . varied from being (a) unendorsed; to (b) indorsed by two parties; to (c) the current iteration with all four indorsements."  *Id.* at 7.  Plaintiffs challenge the validity of the indorsements, and note that "curious attributes" about the indorsements "ring false[.]"  *Id.* at 8.  One such "curious attribute" is the lack of an indorsement from Fannie Mae, the entity which Defendants claim has owned the note since 2006.  *Id.*; Doc. 33, ¶ 6.  Plaintiffs argue that Defendants have previously submitted five recorded documents and four proofs of claim directly contradicting their "conclusory revelation that 'Fannie Mae owns the debt that the Note represents.'"  Doc. 34 at 9.

Defendants fail to address this argument.  *See* Doc. 40 at 4.  Instead, Defendants assert that "[Plainitffs] provide no evidence that Nationstar (or its principal) is *not* entitled to enforce the Note" – that Plaintiffs "attempt to turn the burden of proof on its head, arguing that Nationstar must prove its entitlement to enforce the Note in order to validate its efforts to enforce the Deed of Trust (under which Nationstar was indisputably the record beneficiary at the time it substituted the trustee)."  *Id.* (emphasis in original).  Defendants conclude that this argument "is just the old 'show me the note' theory that has long since been rejected."  *Id.* (citing *Hogan*, 277 P.3d at 783).

Defendants' argument is not persuasive.  Although a beneficiary does not have the burden of demonstrating their rights before a non-judicial foreclosure, "if a borrower is in default and possesses a good faith basis to dispute the authority of an entity to conduct a trustee's sale, the borrower should not be prohibited from challenging its authority simply

because such action may slow down the foreclosure process." *Steinberger*, 318 P.3d at 430.  In this instance, Defendants have introduced conflicting evidence of ownership, submitting recorded documents to the bankruptcy court identifying both Aurora and Nationstar as the creditor on Plaintiffs loan, and asserting in this litigation – with no supporting documents – that Fannie Mae has been the owner of the loan since 2006. Furthermore, Defendants assert that Nationstar is Fannie Mae's loan servicer for Plaintiffs' loan, but provide no documentation or affidavit from Fannie Mae to that effect. The Court finds that Plaintiffs have raised a question of fact regarding their good faith basis for disputing Defendants' authority to conduct a trustee's sale.  In light of Defendants' conclusory argument and their confusing and unsupported assertions regarding the role of Fannie Mae in this case, the Court cannot grant summary judgment in their favor on this issue.

### 6.     Summary.

The Court grants summary judge on Plaintiffs' arguments that (1) GN Mortgage, LLC did not exist in October 2006 when the Deed of Trust was signed; (2) MERS's assignment of the Deed of Trust in December 2010 was executed without authority and by a non-MERS member; (3) conditions precedent to enforcing the Deed of Trust were not performed in compliance with the Deed's terms; and (4) MERS is not a beneficiary of the Deed of Trust under A.R.S. § 33-801(1).   Because Defendants have presented contradictory evidence of ownership, issues of fact preclude summary judgment for Defendants on Claims 1-4.

### B.     Claims 5, 6, and 7: FDCPA, RESPA, TILA.

### 1.     FDCPA.

To the extent Plaintiffs allege violations of the FDCPA involving the non-judicial foreclosure proceedings initiated by Nationstar, Plaintiffs' claim fails.   The FDCPA applies only to debt collectors who engage in practices prohibited by the FDCPA in an attempt to collect a consumer debt.  *See Fischer v. SunTrust Mortg. Inc.*, No. CV-15-02075-PHX-JJT, 2016 WL 2746978, at *5 (D. Ariz. May 10, 2016); *Mansour*, 618 F.

Supp. 2d at 1182.  Under the FDCPA, a "debt collector" includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a (6); *Diessner*, 618 F. Supp. 2d at 1188.  This definition does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."  § 1692a (6)(A).

The Ninth Circuit has not explicitly addressed whether mortgagees and their assignees are "debt collectors" and whether non-judicial foreclosure actions constitute debt collection under the FDCPA.  *See Diessner*, 618 F. Supp. 2d at 1188.  Other circuits have held that mortgagees and their beneficiaries are not debt collectors subject to the FDCPA.  *See id.*; *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).  And district courts, including this one, have held that "the activity of foreclosing on [a] property pursuant to a deed of trust is not collection of a debt within the meaning of the FDCPA."  *See Diessner*, 618 F. Supp. 2d at 1189 (citing e.g., *Mansour*, 2009 WL 1066155 at *2).  The Court concludes that Plaintiff can make no FDCPA claim that arises from the non-judicial foreclosure proceeding because such a proceeding is not the collection of a debt for purposes of the FDCPA.  *See Pryzblyski v. Stumpf*, No. 10-CV-8073-PCT-GMS, 2011 WL 31194, at *5 (D. Ariz. Jan 5, 2011) (citing *Mansour*, 618 F. Supp. 2d at 1182).

To the extent Plaintiff alleges violations of the FDCPA for "false representation of the character or the amount of the debt[,]" Plaintiffs provide no support whatsoever for the assertion.  Doc. 34 at 16.  Indeed, Plaintiffs' FDCPA allegations fail to include even a single cite to evidence in the record.  *See id.*  The Court will grant summary judgment on the FDCPA claims.

## 2.    RESPA.

Under RESPA, when a servicer receives a "qualified written request" ("QWR") from a borrower "for information relating to the servicing of [the] loan, the servicer shall

provide a written response acknowledging receipt of the correspondence within 5 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A).  A QWR is "a written correspondence" that (1) includes or enables the servicer to identify the name and account of the borrower and (2) includes a statement of the reasons for the borrower's belief that the account is in error or provides sufficient detail regarding other information sought. § 2605(e)(1)(B)(i)-(ii).

In the absence of several exceptions, the servicer must respond to a borrower's QWR by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also Castillo v. Nationstar Mortg. LLC*, No. 15-CV-01743-BLF, 2016 WL 6873526, at *8 (N.D. Cal. Nov. 22, 2016). The "reasonable investigation" requirement imposes a "substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement of reasons." *Guccione v. JPMorgan Chase Bank, N.A.*, No. 3:14-CV-04587 LB, 2015 WL 1968114, at *12 (N.D. Cal. May 1, 2015) (citing *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 804 (E.D. Pa. 2014)).

Plaintiffs assert that "Nationstar repeatedly failed to conduct a reasonable investigation or to adequately respond to [Plaintiffs'] requests."  Doc. 34 at 15. Defendants argue that "[Plaintiffs'] own evidence demonstrates that Nationstar responded to their requests, indicating the account was not in error[,]" and "[Plaintiffs] have produced no evidence of an error in the account."  Doc. 40 at 5.  Both parties cite evidence showing that Plaintiffs requested investigations into perceived errors and that

1    Nationstar responded with assurances that the account was correct.  Doc. 35, ¶¶ 27, 37,

2    40, 42-46; Doc. 37-6 at 10; Doc. 38-5 at 21; Doc. 40 at 5.  Thus the determinative issue is

3    whether Nationstar's investigations were reasonable under the meaning of 12 C.F.R.

4    § 1024.35(e)(1)(i)(B).

5        Material issues of fact exist as to whether Nationstar's investigations of Plaintiffs'

6    QWR were reasonable.  Both parties cite the same evidence in support of opposite

7    conclusions, and both make rather conclusory arguments as to whether Nationstar's

8    investigations of Plaintiffs' QWRs were reasonable.  Doc. 34 at 15; Doc. 40 at 5.  The

9    Court finds summary judgment is inappropriate on this RESPA claim.

10       Plaintiffs also assert that "[i]t breaches the contracts and violates RESPA when a

11   loan servicer fails to promptly credit payments" and allege that "Aurora and Nationstar

12   were insufficiently vigilant or competent to redress their own errors."  Doc. 34 at 17.

13   This one-paragraph, conclusory assertion provides no citation to evidence and no

14   allegation of specific instances of a violation.  Such bare allegations are insufficient to

15   survive summary judgment.  The Court will grant summary judgment on the RESPA

16   claim that payments were not properly credited.

17                    **3.    TILA.**

18       Plaintiffs provide virtually no argument in support of their TILA allegations.  In

19   full, Plaintiffs' brief states the following:

20       TILA imposes loan servicers with the duty to promptly credit payments.  15
         U.S.C. § 1639f; Reg. Z, 12 C.F.R. § 1026.36(c)(1).  TILA also bans
21       pyramiding of late fees. Reg. Z, 12 C.F.R. § 1026.36(c)(2).  TILA imposes
         a duty to provide a timely and accurate payoff statement.  15 U.S.C.
22       § 1639g; Reg. Z, 12 C.F.R. § 1026.36(c)(3).  Borrowers have a private right
         of action regarding these duties. 15 U.S.C. § 1640(a).
23
         An "accurate" payoff statement based on the "best information available"
24       should include suspended or unapplied funds.  "The principal purpose of
         TILA's payoff statement provision is to provide borrowers with the exact
25       amount that the borrower needs to pay to retire the loan based on the 'best
         information available.'"  *Jamison v. Bank of Am., N.A.*, No. 2:16-CV-
26       00422-KJM-AC, 2016 WL 3653456, at *1-2, *5–6 (E.D. Cal. July 7,
         2016).
27

28

Doc. 34 at 16.  In a later section of the brief, Plaintiffs allege, without citation to the record, that "Nationstar falsely maintained that Plaintiffs owed 15 installments of $860.61, despite evidence of payment to the bankruptcy trustee." *Id.* at 17.  Plaintiffs then further allege that Nationstar (1) "assessed more than fifteen inspection fees for an occupied home in bankruptcy[,]" (2) "misapplied many of Plaintiffs' payments that included escrow payments[,]" and (3) "rejected payments refused to reasonably investigate, and damaged Plaintiffs." *Id.*  But again, Plaintiffs provide no evidence for these assertions.  The only citations accompanying these allegations reference exhibits showing that Defendants assessed inspection fees (Doc. 35, ¶¶ 36-38 (citing Doc. 38-1 at 13; Doc. 38-2 at 6-17)), and received payments during Plaintiffs' three bankruptcy proceedings from either Plaintiffs or the bankruptcy trustee (Doc. 35, ¶¶ 27, 29, 34, 37).  But Plaintiffs do not explain why or how these instances are violations of TILA.  The Court will grant summary judgment of Plaintiffs' final claim alleging violations of TILA.

**IV.    Conclusion.**

Plaintiffs' Claims 1 through 4 turn on whether Defendants had the authority to initiate non-judicial foreclosure proceedings on Plaintiffs' property.  The Court will grant summary judgment on Plaintiffs' first four reasons for asserting that Defendants lack such authority, but issues of fact on Plaintiffs' fifth reason preclude summary judgment on Claims 1-4.  The Court will grant Defendants' motion for summary judgment on Plaintiffs' Claims 5 and 7, alleging violations of the FDCPA and TILA, because Plaintiffs have failed to provide sufficient evidence to create a material issue of fact.  The Court will deny summary judgment on Plaintiffs' Claim 6, alleging RESPA violations, because Plaintiffs have shown a material issue of fact.

**IT IS ORDERED:**

1.    Defendants' motion for summary judgment (Doc. 32) is **granted** as to Plaintiffs' first four arguments in support of Claims 1-4 and on Claims 5 and 7, and **denied** as to all remaining claims.

2.      Defendants motion to strike Plaintiffs' 14 page memorandum objecting to Fay Janati's declaration as a violation of LR Civ 7.2(m)(2) (Doc. 35 pgs. 11-26) is **granted**.

3.      A telephonic conference call is set for **April 7, 2017 at 2:30 p.m.** to set a trial date and schedule a final pretrial conference.  Counsel for Plaintiff shall initiate a conference call to include counsel for all Defendants and the Court.  If Counsel prefers to use a dial-in number, the dial-in number shall be provided to all counsel and the Court no later than **12:00 noon on April 6, 2017**.

Dated this 27th day of March, 2017.


_____

David G. Campbell
United States District Judge